CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
SEP - 1 2011
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| KEVIN JOHNSON, <br> Plaintiff, | Civil Action No. 7:10-cv-00381 |
| v. | **MEMORANDUM OPINION** |
| LINDA SHEAR, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Kevin Johnson, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants eighteen people of the Virginia Department of Corrections ("VDOC"), mostly VDOC employees at the Red Onion State Prison ("Red Onion"). They include Linda Shear, Gene Johnson, Fred Schilling, John Garman, Tracy Ray, Richard Rowlette, James Wade, C. Salyers, Wilmont, S. Clark, A. Hamilton, D. Dallafior, Osbourne, M. Boggs, Rena Mullins, Fonnie Taylor, Kevin McCoy and James Lyall. Plaintiff alleges that the defendants serve inmates inedible and unhealthy food at Red Onion. Plaintiff requests my recusal, and the defendants filed a motion for summary judgment. The time for plaintiff to respond expired,[1] making the matter ripe for disposition. After reviewing the record, I deny plaintiff's motion for recusal and grant the defendants' motion for summary judgment.

I.

Plaintiff describes the following information in his complaint. Plaintiff is dissatisfied

---

[1] Plaintiff filed a motion for sanctions because plaintiff, pursuant to VDOC policy, is already indebted to Red Onion for more than $50 for prior copy costs and Red Onion will no longer provide free copies to him. Plaintiff claims that he had affidavits from Red Onion inmates but he did not file them with the court in response because he could not have free copies made. However, I find this argument does not warrant sanctions, and I deny his request. See United States v. Moussaoui, 483 F.3d 220, 236 (4th Cir. 2007) (stating federal courts possess certain implied inherent powers); Crowley v. L.L. Bean, Inc., 361 F.3d 22, 28 (1st Cir. 2004) (stating courts decide what rules are desirable and how rigorously to enforce them).

with the food service he receives at Red Onion. Plaintiff believes that the quality of food actually served at Red Onion falls below the standards set by the VDOC as means to cut costs. Plaintiff alleges the food is "rotten and spoiled, vermin infested, contaminated with parasites and/or bacterial infections, and/or unripe, etc., undercooked...." (Compl. 3.) Consequently, the VDOC's menu plans allegedly "provide for only the minimum daily nutritional needs of sedentary to only moderately active person [sic] in calories count and in vitamins and minerals." (Id. 2.) Plaintiff claims that he exercises six days per week and, therefore, the menu is inadequate for him. (Id. 4.) Plaintiff alleges that defendants Ray, Rowlette, "and others" punished inmates who broke or refused to return their food trays by placing them on restricted feeding schedule with Diet Loaf[2] for periods of up to one week and/or by serving the inmates' food in rubber or Styrofoam plates and cups without a tray. (Id. 3-4.) Plaintiff argues that use of the Diet Loaf is a punitive measure aimed at "behavior control/modification" and that it is nutritionally inadequate. (Id. 4.)

Plaintiff alleges that various VDOC officials have retaliated against him by preventing him from making emergency grievances for three months after he complained about the food quality. (Id. 3.) Plaintiff also complains that he has not been allowed to purchase supplemental food items at the prison commissary "in violation of Virginia Board of Corrections Standards." (Id. 4.)

Plaintiff requests as relief unspecified nominal, compensatory, and punitive damages jointly and severally against the defendants with pre- and post-judgment interest. Plaintiff also

---

[2] A restricted feeding schedule means an inmate receives twice daily a 1250 to 1510 calorie Diet Loaf. The Diet Loaf is a high-calorie, flour-based baked mixture of other nutritious ingredients. (Compl. Ex. C.)

requests injunctive relief.

II.

A.     PLAINTIFF FAILS TO ESTABLISH A BASIS FOR MY RECUSAL.

As an initial matter, plaintiff filed a motion seeking my recusal. Two federal statutes govern judicial recusal: Section 144 and Section 455 of Title 28 of the United States Code. Section 144 requires the petitioner to file an affidavit and a certificate of counsel of record stating the claim is made in good faith; Section 455 is self-activating and does not require such procedural steps. Since plaintiff did not follow the procedural requirements of Section 144, I construe his motion for recusal under Section 455. See Givens v. O'Quinn, No. 2:02cv00214, 2005 U.S. Dist. LEXIS 31597, at *5-6 (W.D. Va. Dec. 7, 2005) (determining recusal under § 455 since plaintiff did not file an affidavit or certificate required by § 144) (citing Liljeberg v. Health Svcs. Acquisition Corp., 486 U.S. 847, 871 n.3 (1988) (Rehnquist, C.J., dissenting) (same)).

A United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must also disqualify himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Id. § 455(b)(1). Partiality requires an apparent wrongful or inappropriate disposition toward a party. United States v. Gordon, 61 F.3d 263, 267 (4th Cir. 1995) (citing Liteky v. United States, 510 U.S. 540, 552 (1994)). Bias requires "a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, . . . rests upon knowledge that the subject ought not to possess[,] . . . [or] is excessive in degree . . . ." Liteky, 510 U.S. at 550 (original emphasis). Bias or partiality, however, are not "expressions of impatience, dissatisfaction, annoyance, and even

3

anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." Id. at 555-56.

Alleging bias or prejudice of a judge's views or rulings that arise from facts or events in current or prior proceedings is an insufficient basis for recusal unless the opinions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555. See Berger v. United States, 255 U.S. 22, 28-29 (1921) (recusing federal judge from trial for stating, "One must have a very judicial mind, indeed, not be to [sic] prejudiced against the German Americans in this country. Their hearts are reeking with disloyalty."). Even remarks made "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555. Additionally, a judge is not required to recuse himself simply "because of unsupported, irrational, or highly tenuous speculation[.]" United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998) (citation omitted).

Plaintiff's motion fails as a matter of law as he has not shown adequate bias or partiality to support recusal. All of plaintiff's grounds for recusal stem from court proceedings and evidence, and the law is clear that judicial viewpoints arising from court proceedings are not a sufficient basis for recusal. My only knowledge of plaintiff comes from his actions filed in this court. I am not biased against plaintiff, but even if plaintiff's allegation is true, that sole reason underlying his claim of negative disposition is not a sufficient basis for recusal. Likey, 510 U.S. at 550-51. Absent a reasonable basis for questioning my impartiality, it is improper for me to recuse myself. United States v. Glick, 946 F.2d 335, 336-37 (4th Cir. 1991). Accordingly, I deny plaintiff's motion for recusal.

4

B.  PLAINTIFF FAILS TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

However, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate

5

failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

1. Plaintiff fails to state a claim against defendants McCoy, Schilling, Garman, Wilmont, Salyers, Lyall, Clark, Hamilton, Dallafior or Boggs.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). However, plaintiff fails to allege any facts against defendants McCoy, Schilling, Garman, Wilmont, Salyers, Lyall, Clark, Hamilton, Dallafior and Boggs and, thus, fails to state a claim against them.

2. Plaintiff fails to state a claim about his access to the Red Onion commissary.

Plaintiff alleges that he has not been allowed to purchase supplemental food items at the Red Onion commissary. Plaintiff also complains that Red Onion employees use access to the commissary as "an extension of the disciplinary procedure" and limit access to the commissary to those inmates who have not committed any disciplinary infractions over a period of time." (Compl. 4.)

Plaintiff fails to identify the legal basis of a constitutional claim to access the Red Onion commissary. This failure is not surprising because inmates do not have a constitutional right to a commissary. Gannon v. Alyers, 2009 U.S. Dist. LEXIS 27542 (W.D. Va. Mar. 30, 2009) (citing Cato v. Watson, 212 F. App'x 258, 259-60 (5th Cir. 2006)). See Arehart v. Keefe Commissary
6

Network Sales, 2009 U.S. Dist. LEXIS 76033 (W.D. Va. 2009) ("No federal constitutional provision requires jails to provide inmates with a commissary to purchase food items at any price.") (citing Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996)).

Moreover, the defendants provide a rational basis to restrict access to commissary privileges at Red Onion. See Turner v. Safley, 482 U.S. 78, 89 (1987) (holding that the rational basis test applies to claims of constitutional violations involving a correctional facility). Red Onion Warden Ray testifies that Red Onion provides a "basic quality of life privilege plan" that allows inmates to earn increasing levels of privileges based on good behavior. (Ray Aff. (Def.s' Br. Supp. Mot. Summ. J. (no. 21) Ex. A) ¶ 19.) The purpose of this plan is "to help offenders recognize their responsibility for good behavior and improving coping skills rather than exhibiting behaviors seeking immediate gratification. (Id.) Under this plan, inmates who refrain from committing the most serious disciplinary offenses for 1.5 years and who refrain from committing certain less serious disciplinary offenses for 6 months may regain their access to snacks from the commissary. (Id.)

Warden Ray testifies that Johnson has been convicted of 516 disciplinary offenses since 1991, including such serious disciplinary offenses as threatening bodily harm, as recently as November 2010. (Id. ¶ 20.) Due to this pattern of behavior, Red Onion officials removed plaintiff's privileges to the commissary. Accordingly, the defendants had a rationale basis reasonably related to a legitimate penological interest to remove plaintiff's access to the commissary, but, regardless, plaintiff does not have a constitutional right to a commissary.

3. Plaintiff fails to state a claim about access to grievance procedures.

Plaintiff claims that prison officials prevented him from filing more emergency grievances

after he filed many emergency grievances about the allegedly poor food. However, plaintiff does not have a due process or other constitutional right to Red Onion's or the VDOC's grievance procedures. It is well settled that the Constitution creates no entitlement of a prisoner to grievance procedures or access to any such procedure voluntarily established by a state. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, plaintiff fails to state a claim upon which relief may be granted.

4. Plaintiff fails to state a claim about Styrofoam and rubber utensils, plateware, or trays.

Plaintiff alleges that defendants punished inmates who broke or refused to return their food trays by giving them Diet Loaf for up to one week and/or by serving inmates' food with rubber or Styrofoam utensils, plateware, or trays. However, plaintiff presently lacks standing to sue on behalf of other inmates. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61(1992) (holding that standing requires injury, causation, and redressability). Even if plaintiff received Styrofoam or rubber eating items, plaintiff does not have a constitutional right to silverware or to not receive Styrofoam or rubber utensils, plateware, or trays. Accordingly, plaintiff fails to state a claim upon which relief may be granted.

C. THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S MENU AND DIET LOAF CLAIMS.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] Material facts

---

[3] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

9

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Moreover, a plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove the following elements: (1) the deprivation of a basic human need was objectively "sufficiently serious" and (2) the prison official subjectively acted with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991). Allegations of inadequate food for human nutritional needs or unsanitary food service facilities may be sufficient to state a cognizable constitutional claim if the deprivation is serious and the defendant is deliberately indifferent to the need. See Bolding v. Holshouser, 575 F.2d 461 (4th Cir. 1978).

This court revisits once again whether the VDOC's Diet Loaf constitutes cruel and

10

unusual punishment in violation of the Eighth Amendment. See, e.g., Henderson v. Virginia, 2008 U.S. Dist. LEXIS 5230, *14-15 (W.D. Va. Jan. 23, 2008); Blount v. Gentry, 2007 U.S. Dist. LEXIS 33092, *16-17 (W.D. Va. May 3, 2007), aff'd 253 F. App'x 299 (4th Cir. 2007); Blount v. Williams, 2007 U.S. Dist. LEXIS 21215, *19-20 (W.D. Va. Mar. 26, 2007); Thomas v. Virginia, 2005 U.S. Dist. LEXIS 15517, *8-11 (W.D. Va. July 28, 2005). Plaintiff attaches a document entitled "Restricted Feeding Diet Loaf Recipe" that states, "[E]ach diet loaf contains 1250 calories, for a total of 2500 calories per day." (Compl. Ex. C.) Plaintiff alleges that the VDOC removed the meat content from the Diet Loaf in 2006 and did not replace it with another protein source.

Linda Shear, a nurse and the VDOC Dietician, provided the following averments to support the defendants' motion for summary judgment. The VDOC's regular menu provides a daily caloric intake of 2700-2800 calories. (Shear Aff. ¶ 6.) The VDOC recently tested the Diet Loaf and found that the daily caloric intake from Diet Loafs exceed the requirements of VDOC Food Services Manual by offering 3020 calories per day. (Id. ¶ 7.) The Diet Loaf contains "ample protein" from kidney beans, dry milk, and eggs, and meat was removed from the Diet Loaf to accommodate vegetarians. (Id.) As of February 2011, Johnson was 5'9" tall and weighed 180 pounds, "which is a healthy weight for his height based on the National Institute of Health body mass index chart." (Id. ¶ 8.)

Red Onion's Director of Nursing also avers that plaintiff weighed 180 pounds in February 2011 and her review of his medical record between April 8, 2010, and April 12, 2011, did not reveal "any complaints about hunger, food poisoning or other food related issues in the past year." (Phipps Aff. ¶¶ 4-5.) Nurse Phipps similarly reports that plaintiff "is not underweight or

11

malnourished." (Id. ¶ 5.) Finally, James Wade, the Red Onion Food Operations Director, avers that all food at Red Onion, including the Diet Loaf, is prepared in accordance with the VDOC master menu, evaluated quarterly, protected from contamination, and inspected for wholesomeness; all ingredient substitutions are approved in accordance with the Food Service Manual. (Wade Aff. ¶¶ 4-12.)

Plaintiff's claim that the menu is inadequate to his needs lacks merit, both as matter of law and in light of the relevant facts in this case. Plaintiff's healthy weight demonstrates that he is not in any way undernourished. See Henderson, supra, at *15 (noting that the plaintiff failed to provide "any medical evidence to substantiate a claim that he experienced any significant injury or that he lost weight."). The Diet Loaf is an acceptable corrective, penological response to threats to inmate discipline or institutional security. Wade avers that inmates destroyed between 50 and 100 food trays a week, costing Red Onion $3.00 per tray. (Wade Aff. at ¶ 15.) It is certainly reasonable to serve inmates who intentionally destroy their trays with trays made of more resilient rubber plateware or cheaper Styrofoam. Furthermore, jagged, plastic pieces from broken trays are a clear threat to institutional security because of inmates' propensity to make shanks from shards of plastic. Furthermore, plaintiff received a restricted feeding schedule shortly after he received three separate disciplinary violations for threatening to stab a correctional officer with a piece of steel that he claimed was secreted in his cell and refusing to return his tray and cup to VDOC personnel after being directly ordered to do so. (Ray Aff. ¶¶ 14-16.) Given these circumstances, plaintiff's placement on restricted feeding with the Diet Loaf was reasonable and rationally related to legitimate penological interests.

All VDOC facilities follow the Master Menu and adhere to the portions indicated on the

menu. (Shear Aff. ¶ 4.) The planning and preparation of all meals takes into consideration food flavor, texture, temperature, appearance, and palatability, and the same food served to offenders is also served to staff. (Id.) Portions are served in those quantities as indicated on the Master Menu. (Id.) Portion control is used in meal planning, preparation, and service in order to prevent excessive plate waste and leftovers and is enforced for both staff and offenders. (Id.) The VDOC menus are analyzed and certified to meet or exceed the Recommended Dietary Allowances as defined by the Food and Nutrition Board of the National Academy of Sciences. (Id. ¶ 6.) The average daily calorie count for three meals from the Master Menu averages 2700 to 2800 calories. (Id.)

Plaintiff generally claims that the menu plans designed by Defendant Shear and implemented by the VDOC "provide for only the minimum daily nutritional needs of sedentary to only moderately active person [sic] in calorie count and in vitamins and minerals." (Compl. 2.) Notably, plaintiff fails to allege or proffer any fact to support his allegation that the food provides inadequate nutrition. See, e.g., Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (recognizing that courts are not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, unreasonable inferences, or allegations that contradict matters properly subject to judicial notice or by exhibit."). Plaintiff claims that the menu is minimally adequate for the inmate population, not that it is wholly inadequate. Furthermore, plaintiff states that the daily calorie allotment is minimally insufficient for him because he exercises six times per week. However, plaintiff's exercise schedule in his single-bunk cell inside a maximum-security facility is within his power to control. Plaintiff recognizes the menus' adequacy for people who exercise less often. Plaintiff can simply change his exercise regimen to permit the

menus to provide the necessary level of sustenance. See Owens v. Hinsley, 635 F.3d 950, 955 (7th Cir. 2011) (holding that a plaintiff's voluntary decision to not eat does not state an Eighth Amendment claim). Accordingly, plaintiff fails to establish that the food service constitutes cruel and unusual punishment.

III.

For the foregoing reasons, the defendants are entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194 (2001) (stating defendants are entitled to qualified immunity if plaintiff fails to establish a constitutional deprivation). Accordingly, I deny plaintiff's motions for recusal and sanctions and grant the defendants' motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for the defendants.

**ENTER**: This 1st day of September, 2011.

　　　　　　　　　　　　　　　　　　*/s/ Jackson L. Kiser*
　　　　　　　　　　　　　　　　　　Senior United States District Judge

14